**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MOHAMED FAYARD EL TAMIMI** | **CASE NO. 6:26-CV-01250 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BRIAN ACUNA, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

**REPORT AND RECOMMENDATION**

Currently before the court is a petition for writ of habeas corpus filed by pro se petitioner Mohamed Fayad El Tamimi on April 20, 2026, pursuant to 28 U.S.C. § 2241. Doc. 1. The Government filed a response on June 24, 2026. Doc. 6. The Petitioner filed a Reply on July 1, 2026 (doc. 7), as well as a Motion for Expedited Status Conference and/or Determination on August 26, 2026 (doc. 8). The matter is ripe for review and has been referred to the undersigned for review, report and recommendation pursuant to 28 U.S.C. § 636 and the standing orders of this court. For the reasons which follow, IT IS RECOMMENDED that this habeas corpus action be GRANTED.

## I. BACKGROUND

Petitioner was born in Egypt on March 26, 1958. *Id.* He entered the United States via the port of New York on November 21, 1997, with a B2 visa. *See* Declaration of Acting Assistant Field Office Director ("AFOD") Brandon Bennethum, doc. 6-1, ¶ 4. On or about May 15, 2001, the Department of Homeland Security served Petitioner with a Notice to Appear. *Id.* at ¶ 5. On July 14, 2003, an Immigration Judge granted the Petitioner Voluntary Departure on or before September 12, 2003. *Id.* at ¶ 6. On July 28, 2003, the petitioner filed an appeal with the Board of Immigration Appeals which was dismissed by the BIA who granted the petitioner Voluntary Departure on or before August 28, 2003. *Id.* at ¶ 7. The Petitioner repeatedly challenged his

deportation through various legal appeals and motions between 2003 and 2005, ultimately resulting in his release under an order of supervision in 2008. *Id*. at ¶ ¶ 8-10. On March 18, 2025, DHS/ICE Enforcement and Removal Operations (ERO) Nashville encountered petitioner at the ICE Nashville office where he was taken into custody. *Id*. at ¶ 11.

On May 2, 2025, ERO issued a travel document request to the Embassy of Jordan. *Id*. at ¶ 12. Over a year later, on June 24, 2026, ERO New Orleans requested permission from the Jordanian Embassy to remove petitioner on his expired passport via Royal Jordanian Airlines due to an update in removal guidelines for Jordanian citizens on February 27, 2026. On the same day, ERO New Orleans submitted a request to headquarters regarding removal to Egypt based on the immigration judge's removal order and the petitioner's prior residency and family ties to Egypt. *Id*. at ¶ 14.

No removal plans have been arranged at this time, although ERO New Orleans continues to "follow up with its headquarters and the Jordanian Embassy regarding the pending travel documents" and have represented that they will "continue to work towards Petitioner's removal from the United States." *Id*. at ¶ 15.

Petitioner argues that his continued detention violates § 1231(a)(6), as interpreted by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable and he asks this Court to order his immediate release under conditions of supervision. He also alleges violations of the Fifth Amendment, the Fourteenth Amendment, and the Administrative Procedures Act.

The Government responded to the Petition arguing that Petitioner's detention is both lawful and constitutional.

## II. LAW AND ANALYSIS

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the extension and application of that decision by *Clark v. Martinez,* 543 U.S. 371 (2005), to aliens who are inadmissible, the United States Supreme Court adopted a six-month period for which the institutional detention of an alien, found within the United States and ordered removed pursuant to various provisions of Section 237(a) of the Act [8 U.S.C. § 1227(a)], is presumptively reasonable, and concluded that, "… once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. In the words of the Court:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699-700.

The Supreme Court clearly indicated that the lapse of the presumptive period does not mandate release and concluded that, "[t]o the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The United States Fifth Circuit Court of Appeals has recognized that "[t]he [Supreme] Court's decision creates no specific limits on detention, however, 'as an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future'." *Andrade v. Gonzales*, 459

F.3d 538, 543 (5th Cir. 2006); *see also, Agyei–Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

Thus, in order to state a claim for relief under the *Zadvydas* decision, an alien must establish: 1) post-removal-order detention in excess of six months at the time of the filing of his or her petition; and 2) good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*; *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. To meet his burden under the second prong, an alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). To shift the burden to the Government, an alien must demonstrate that "the circumstances of his status" or the existence of "particular individual barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* If the alien fails to come forward with an initial offer of proof, the petition is ripe for dismissal. *Akinwale*, 287 F.3d at 1051.

***A. Length of Detention***

An alien's post-removal-period detention under 8 U.S.C. § 1231 is limited to a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas,* 533 U.S. at 689. The Supreme Court has found that once the removal period begins, six months is a reasonably necessary period to remove the alien. *See id.* at 701. After six months, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id.*

It is undisputed that Petitioner is subject to a final order of removal and has been in detention since March 18, 2025, over 1 year and 5 months. As such, detention has surpassed the six-month presumption of reasonableness under *Zadvydas*. Therefore, the analysis shifts to whether Petitioner's removal is foreseeable at present.

***B. Petitioner's Initial Burden***

The undersigned finds that Petitioner has presented good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Despite having over 15 months, Respondents have not secured travel documents for Petitioner, which is a determinative barrier to removal. Respondents have not produced any evidence that a travel document will be issued or is pending, that any country is willing to accept Petitioner, or that a concrete timeline exists for his removal. The Petitioner notes that following the May 2, 2025, request for travel documents to Jordan, the only additional steps taken towards his removal came on June 24, 2026, the due date for Respondents' response to the instant Petition, and 418 days after Petitioner was first detained. *See* doc. 7, p. 3; *see also* doc. 6, att. 1 at ¶ 14. While no active steps have been taken to advance his removal since June 2026, the Government represents that it "will continue to work toward Petitioner's removal from the United States." Doc. 6, att. 1, ¶ 15. Nothing from the record suggests that Petitioner's removal is reasonably foreseeable, and so the burden shifts to Respondents.

***C. Respondents' Burden***

Respondents argue Petitioner has failed to provide this Court with sufficient evidence that he has good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Instead, Respondents contend they are "actively making efforts to remove

Petitioner to either Jordan or Egypt," as evidenced by the fact that the request for a Jordanian travel document is pending. *See* doc. 6, p. 5.

Under the *Zadvydas* standard, Respondents cannot meet their burden based on "a pending request for travel documents alone." *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 706 (W.D. Tex. 2025); *see also Medellin Martinez v. Bondi*, No. 25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025) (same). The mere "potential for a travel document at some point in the future is not sufficient to justify further detention." *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 2:06-cv-1578, 2007 U.S. Dist. LEXIS 61516, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted).

Under the circumstances of this case, the Court concludes that habeas relief is proper and § 1231 and *Zadvydas* require Petitioner's release from detention. The Court finds no need to address any other claim or challenge.

## III. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the petition be **GRANTED** and Petitioner be **RELEASED**, subject to supervision "under regulations prescribed by the Attorney General."[1]

**IT IS FURTHER RECOMMENDED** that all pending motions be **DENIED** as moot.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking

[1] 8 U.S.C. 1231(a)(3).

either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 14th day of September, 2026.

THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE